EDWIN GARCIA *v.* CITY OF HARTFORD ET AL.
(SC 18205)

Rogers, C. J., and Katz, Vertefeuille, Zarella and McLachlan, Js.

Argued April 22—officially released June 30, 2009

*Robert F. Ludgin,* for the appellant (plaintiff).

*Catharine H. Freeman,* assistant corporation counsel, with whom, on the brief, was *John Rose, Jr.,* corporation counsel, for the appellees (defendants).

*Opinion*

KATZ, J. The sole issue in this appeal is whether the plaintiff, Edwin Garcia, a retired police officer, is required to seek relief through the grievance procedures under the collective bargaining agreement (agreement) between the named defendant, the city of Hartford,[1] and the Hartford police union (union) before he can bring a mandamus action to compel the defendant to comply with a provision in that agreement allowing the defendant's employees to trade in accumulated unused sick time in order to increase their monthly pension benefits.[2] The trial court concluded that, because the plaintiff was required to exhaust the remedies provided under that agreement and had not pleaded facts to establish an exception to the exhaustion requirement, the court lacked subject matter jurisdiction over the case, and, accordingly, dismissed the action. We conclude that the trial court improperly determined that the agreement can be interpreted to require a retiree

[1] The present action was filed against the city of Hartford, its treasurer and its pension commission as defendants. For purposes of this appeal, we refer to all three collectively as the defendant.

[2] We note that, in its brief to this court, the defendant also has raised a claim that a writ of mandamus is improper in this case. Consistent with our general practice, because this argument was neither raised nor briefed at trial, and the defendant is asserting it for the first time on appeal, we decline to address it. See *Konigsberg* v. *Board of Aldermen,* 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge"); *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission,* 278 Conn. 408, 418, 898 A.2d 157 (2006) (declining to review claim because defendants did not raise it adequately before trial court).

to exhaust the remedies available to employees therein. Accordingly, we reverse the trial court's judgment.

The record reveals the following facts alleged by the plaintiff, which are accepted as true for purposes of a motion to dismiss, and procedural history. The plaintiff resigned from the defendant's police department on June 26, 1996, after sixteen years of service. On the date of his resignation, he was a member of the union and was covered by the agreement between the union and the defendant in effect for the period of July 1, 1996, to June 30, 1999. Although, at the time of his retirement, he did not yet qualify for pension benefits, pursuant to the terms of the agreement, the plaintiff applied for and began to collect pension benefits upon the twentieth anniversary of his start date. Under the agreement, as set forth in the plaintiff's complaint, "an employee, whose retirement becomes effective after July 1, 1994, may exchange a portion of his/her accumulated sick leave for up to four (4) years of additional pension service time for the purpose of computing the amount of his/her retirement allowance." Thereafter, the plaintiff made several unsuccessful attempts to have the defendant's pension commission and personnel department staff allow him to trade in the number of days of his accumulated sick time that correlated to four additional years of pension service time so as to increase his retirement allowance. Concluding that he did not have standing to bring a grievance pursuant to the agreement because he lacked employee status, the plaintiff subsequently filed the present action seeking a writ of mandamus.

The defendant moved to dismiss the action, claiming that the trial court did not have jurisdiction over the matter because the plaintiff had failed to exhaust the remedies provided under the agreement. Specifically, the defendant contended that the plaintiff was required to pursue relief through the grievance procedures under

the agreement before he could bring any judicial action. The plaintiff contended in response that, because he did not have standing to pursue the grievance procedure, as he was no longer an "employee" under the terms of the agreement, any attempt to avail himself of administrative remedies would have been futile. In support of his memorandum of law in opposition to the defendant's motion to dismiss, the plaintiff submitted, inter alia, a copy of relevant portions of the agreement. See footnote 4 of this opinion.

The trial court concluded that, because the plaintiff had alleged violations of the agreement, he fell under the general rule requiring that he exhaust the procedures set forth therein. The court rejected the plaintiff's argument that resort to the grievance procedures would have been futile because he no longer was an employee covered under the agreement in light of the facts that the plaintiff had: (1) alleged in his complaint that the defendant had allowed other former employees to trade in their accumulated sick leave; and (2) failed to allege that he did not have access to the grievance procedure under the agreement. Accordingly, the trial court dismissed the mandamus action, and this appeal followed.[3]

The plaintiff claims that the trial court improperly concluded that he was required to exhaust the grievance procedures under the agreement. We conclude that, because the plaintiff could not avail himself of those grievance procedures, the trial court improperly determined that it lacked subject matter jurisdiction over the case. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

We first set forth the well established standard of review and our relevant jurisprudence regarding the

---

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

doctrine of exhaustion of remedies (exhaustion doctrine). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the [exhaustion doctrine] implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 250–51, 851 A.2d 1165 (2004).

"Under [the exhaustion doctrine], a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted.) *Drumm* v. *Brown*, 245 Conn. 657, 676, 716 A.2d 50 (1998). "The [exhaustion doctrine] is applied in a number of different situations . . . including when an exclusive grievance or arbitration procedure is contained in a collective bargaining agreement and when an administrative appeal is taken." (Citation omitted.) *Neiman* v. *Yale University*, supra, 270 Conn. 253; accord *Hunt* v. *Prior*, 236 Conn. 421, 431, 673 A.2d 514 (1996) ("[f]ailure to exhaust the grievance procedures deprives the court of subject matter jurisdiction" [internal quotation marks omitted]). "The rationale for the [exhaustion] doctrine, however, is slightly different in each context. In the collective bargaining context, we have stated that, [t]he purpose of the exhaustion requirement is to encourage the use of griev-

ance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, supra, 253–54.

Notwithstanding the important public policy considerations underlying the exhaustion requirement, this court has carved out several exceptions from the exhaustion doctrine; *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority*, 188 Conn. 90, 94, 448 A.2d 210 (1982); although "only infrequently and only for narrowly defined purposes." (Internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993); *LaCroix* v. *Board of Education*, 199 Conn. 70, 79, 505 A.2d 1233 (1986). Such narrowly defined purposes include "when recourse to the . . . remedy would be futile or inadequate." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 565, 821 A.2d 725 (2003). A remedy is futile or inadequate if the decision maker is without authority to grant the requested relief. Cf. *Mendillo* v. *Board of Education*, 246 Conn. 456, 467, 717 A.2d 1177 (1998). "It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Internal quotation marks omitted.) *Simko* v. *Ervin*, 234 Conn. 498, 507, 661 A.2d 1018 (1995).

It is well established that "[u]nions and their employers have broad contractual authority to provide administrative remedies for disputes arising out of the employment relationship." *Trigila* v. *Hartford*, 217 Conn. 490, 494, 586 A.2d 605 (1991). "The authority to . . . settle a grievance is strictly limited by the terms of the collective bargaining agreement and the submission by the parties." *Hartford* v. *Hartford Municipal*

*Employees Assn.*, 259 Conn. 251, 284, 788 A.2d 60 (2002). In the present case, the agreement provides grievance procedures for employees to enforce the terms therein. Therefore, if the trial court correctly determined that the plaintiff was entitled to enforce the terms of the agreement under the grievance procedure, the court likewise correctly dismissed the complaint for lack of subject matter jurisdiction for failure to pursue that remedy.

As we often observe, Connecticut law provides that "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 610, 849 A.2d 804 (2004). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, 266 Conn. 68, 88, 831 A.2d 211 (2003).

In the present case, the trial court's determination that the plaintiff was required to exhaust his collective bargaining remedies was based solely on the facts that the agreement has a grievance procedure for the resolution of disputes arising thereunder and that the plaintiff

had alleged a violation of that agreement.[4] Implicit in the trial court's resolution was its determination, as a matter of law, that the plaintiff was an "employee" covered by those procedures. See id., 89 ("[w]hen only one interpretation of a contract is possible, the court need not look outside the four corners of the contract"). When "the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). Consequently, our review of the trial court's ruling is plenary. We conclude that the grievance procedures clearly do not apply to the plaintiff.

Turning to the agreement in the present case, article II, § 2.1, provides for a multistep grievance procedure for employees to address "[a]ny grievance or dispute which may arise between the parties concerning the application, meaning or interpretation of this [a]greement . . . ." Step one of that process provides in relevant part: "The aggrieved *employee*, who may be represented by an individual delegated by the [u]nion [e]xecutive [b]oard, if said employee so desires, shall take up the grievance or dispute with said employee's first level supervisor who is outside the bargaining unit within seven (7) working days of the date of the griev-

---

[4] The plaintiff, in opposition to the defendant's motion to dismiss, filed an affidavit by Frank J. Szilagyi, an attorney who previously had represented both the plaintiff and the union in other grievances, attesting to the fact that the defendant had taken the position in previous grievances that the grievance process was available only to employees, and copies of various rulings of the state board of mediation and arbitration bearing on this issue. In its reply brief to the plaintiff's opposition, the defendant submitted an affidavit from its director of human resources attesting that certain named retired police officers would be entitled to increases in their benefits and would be able to enforce those benefits, if withheld, through the grievance process. It appears from the trial court's memorandum of decision that it did not consider any of this evidence.

ance . . . ." (Emphasis added.) The term "employee" is defined in article I, § 1.8, of the agreement as "a full-time, permanent employee in the bargaining unit, including probationary employees; provided, however, no probationary employee at the entrance level shall have access to the grievance procedure where the issue is one of their discipline or discharge, and no probationary employee in any promotional classification shall have access to the grievance procedure where the issue is one of their demotion."

There are numerous indications in these provisions that a retiree is not covered by the grievance procedures. First, the adjectives that precede the term employee in article I, § 1.8, of the agreement—"full-time, permanent" and "probationary"—indicate *current* employment status. A retiree undoubtedly would not have either a full-time, permanent or a probationary status.

Additionally, the definition in article I, § 1.8, of the agreement refers to an "employee in the bargaining unit . . . ." The seminal case of *Allied Chemical & Alkali Workers of America, Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971), squarely held that retirees are not employees within the bargaining unit. See id. ("in addition to holding that pensioners are not 'employees' within the meaning of the collective-bargaining obligations of the [National Labor Relations Act], we hold that they were not and could not be 'employees' included in the bargaining unit"). In reliance on this fundamental principle, other courts have concluded that grievance procedures limited to employees do not include retirees. See, e.g., *Exelon Generation Co., LLC* v. *Local 15, International Brotherhood of Electrical Workers, AFL-CIO*, 540 F.3d 640, 645 (7th Cir. 2008) ("The [collective bargaining agreement] in *Rossetto* [v. *Pabst Brewing Co.*, 128 F.3d 538 (7th Cir. 1997), cert. denied, 524 U.S. 927, 118 S. Ct. 2321, 141 L. Ed. 2d 695 (1998)] expressly

defined an arbitrable grievance as one between [the defendant employer] and an 'employee.' And retirees are not employees. Id., 540."); *Anderson* v. *Alpha Portland Industries, Inc.*, 752 F.2d 1293, 1298 (8th Cir.) ("[T]he contract language here cannot be read as requiring exhaustion of grievance procedures by retirees. . . . [T]he relevant provisions address only grievances of 'employees' and speak only of 'employees' initiating the contractual dispute resolution procedures."), cert. denied, 471 U.S. 1102, 105 S. Ct. 2329, 85 L. Ed. 2d 846 (1985); *Independence Fire Fighters Assn.* v. *Independence*, 121 Ohio App. 3d 716, 721, 700 N.E.2d 909 (retired firefighters challenging calculation of amounts paid to them upon retirement for accrued but unused holidays, sick leave, and vacation time were not required to exhaust administrative remedies because they no longer were employees and therefore were not governed by collective bargaining agreement), appeal denied, 80 Ohio St. 3d 1449, 686 N.E. 2d 276 (1997).[5] In the absence of a contrary indication, we presume that the parties have used terms in accordance with their

[5] The federal courts have "distinguished retirees who have completely and finally severed their employment relationship, from individuals who, while not presently 'employees' for some reason, were members of the active work force available for hire. [*Allied Chemical & Alkali Workers of America, Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, supra, 404 U.S. 168] (distinguishing individuals who have quit or whose employers have gone out of business)." *Roman* v. *United States Postal Service*, 821 F.2d 382, 387 (7th Cir. 1987). We note that there is nothing inconsistent in construing the term employee to *exclude* the plaintiff for purposes of the grievance procedures but to *include* him for purposes of benefits under the agreement that accrued to him while he was an employee and that the agreement expresses a clear intent to continue after employment terminates. Cf. *Allied Chemical & Alkali Workers of America, Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, supra, 170 ("there is no anomaly in the conclusion that retired workers are 'employees' within § 302 [c] [5] [of the Labor Management Relations Act] entitled to the benefits negotiated while they were active employees, but are not 'employees' whose ongoing benefits are embraced by the bargaining obligation of § 8 [a] [5] [of that act]"). Generally, retirement benefits are not intended to be paid while someone is an active employee with the same employer that has conferred those benefits.

well established, universally accepted meaning under labor law jurisprudence.

The meaning ascribed to the term employee under labor law is consistent with its common meaning. We ordinarily look to the dictionary definition of a word to ascertain its commonly approved usage. See, e.g., *Barton* v. *Bristol*, 291 Conn. 84, 100, 967 A.2d 482 (2009); *Rivers* v. *New Britain*, 288 Conn. 1, 17, 950 A.2d 1247 (2008); *Considine* v. *Waterbury*, 279 Conn. 830, 837, 905 A.2d 70 (2006). Webster's Third New International Dictionary (1993), for example, defines the term employee as "1: *one employed* by another [usually] in a position below the executive level and [usually] for wages 2: in labor relations: any worker *who is under wages or salary* to an employer and who is not excluded by agreement from consideration as such a worker . . . ." (Emphasis added.) See also Black's Law Dictionary (8th Ed. 2004) (defining employee as "[a] person who works in the service of another person [the employer] under an express or implied contract of hire, under which the employer has the right to control the details of work performance"). These definitions make it evident that, like the meaning of employee under labor law, the currency of the relationship is paramount.

Further indications that retirees are not required to exhaust the grievance procedures are found in the grievance provision of the agreement itself. Under that provision, article I, § 2.1, of the agreement, employees are required to commence the grievance process by taking up the matter with the "employee's first level supervisor." A retiree, however, has no supervisor. The agreement provides no alternative method for retirees to commence the grievance process. In addition, the fact that the grievance must be filed within seven working days indicates current employment status. Under similar facts, courts have concluded that the collective bargaining agreement cannot be read to require a retiree

to exhaust the grievance procedures. See *Anderson* v. *Alpha Portland Industries, Inc.*, supra, 752 F.2d 1299 (concluding that, among facts demonstrating that exhaustion of remedies was not required was agreement at issue requiring employee with grievance to take his or her complaints "to a foreman or plant manager, individuals not convenient to retirees, who do not even have a 'workplace' "); *Quick Air Freight, Inc.* v. *Teamsters Local Union No. 413*, 613 F. Sup. 1263, 1273 (S.D. Ohio 1984) (District Court noting in support of its conclusion that exhaustion of grievance procedures not required for disputes between retirees and employer: [1] grievance procedure applies to " 'the aggrieved employee' "; [2] under procedure, aggrieved employee must present his complaint first orally " 'to his supervisor' " who then orally informs employee of his decision; and [3] grievance must be filed within " 'five . . . working days' " after event occurs on which grievance is based); *Quick Air Freight, Inc.* v. *Teamsters Local Union No. 413*, supra, 1273 ("It is abundantly clear that the grievance and arbitration procedure of the contract between [the employer] and [the union] is designed for and limited to disputes arising between 'employees' and management and does not encompass disputes between retirees and management. The plain language of the grievance procedure makes this apparent."). We, therefore, conclude that the agreement in the present case reasonably cannot be construed to require retirees to exhaust the grievance procedures before bringing a court action to enforce rights under the agreement.[6]

---

[6] Although the term "former employee" undoubtedly is broader than "retiree," we note that the legislature has used the term former employee in several statutes when it has intended to expand the meaning of employee to include persons not currently employed by the employer. See, e.g., General Statutes §§ 1-80d, 1-84b, 5-182 (e), 5-248, 5-256, 12-15 (a), 16-8a (e), 16-245*l* (a), 31-51, 31-225a (c) (1) (G) and 31-374 (c) (3). Undoubtedly, parties to an agreement may draft their agreements as broadly as they choose and the law allows. Pursuant to General Statutes § 7-474 (f), when a municipal employer and an employee organization enter into collective bargaining

Although the defendant acknowledges, as it must, that the plaintiff is a *former* employee, it contends nonetheless that the plaintiff could have brought a grievance through the union, or if the union refused, on his own behalf. It points to no language in the agreement to support that construction, relying instead on cases that do not specifically address this issue. As the previous analysis indicates, however, the intent of the parties, as expressed in their agreement, controls in any given case.

For example, the defendant has pointed to *Labbe* v. *Pension Commission,* 229 Conn. 801, 802, 643 A.2d 1268 (1994), wherein the plaintiff had claimed that he was excused from following the grievance procedures established in the collective bargaining agreement because: "(1) the procedures were only available to employees, and the plaintiff was no longer an employee when the grievance arose; (2) the procedures applied only to disputes between the parties to the agreement, and the parties to the agreement did not dispute the issue raised by the plaintiff; (3) using the procedures would have been futile; and (4) General Statutes § 31-51bb permits this action without prior recourse to the grievance procedures." This court expressly declined to address all but the plaintiff's third claim; id., 803; concluding that following the grievance procedures in

agreements that conflict with or are inconsistent with that municipality's charter, special act, ordinance, rules or regulations, the agreement will control. See *Board of Police Commissioners* v. *White,* 171 Conn. 553, 563–64, 370 A.2d 1070 (1976). Thus, parties can agree, for example, to allow a union to pursue retirees' complaints through the grievance procedures. See *Rossetto* v. *Pabst Brewing Co.,* supra, 128 F.3d 541 (holding that union lacks standing to represent retirees in arbitration unless retirees consented to union's representation and employer consented to bargain with union as agent of affected retirees). Furthermore, the parties could have negotiated a specific provision requiring that retirement disputes be resolved through the grievance procedures. They did not. We are, therefore, bound to apply the terms of the agreement as written and cannot enlarge terms beyond their evident meaning.

that case would have been futile because all of the potential officers or entities to whom the plaintiff could take his grievance "were constrained to consider themselves legally bound" by a particular agreement either to reject or to refuse to pursue the plaintiff's claim. Id., 812–13. The defendant mistakenly infers that implicit in this reasoning is the supposition that this court would not have reached the futility ground if the plaintiff otherwise had not been subject to the grievance procedure. It is not an uncommon practice for this court to assume, without deciding, a factual or legal predicate in order to resolve an appeal on the issue most readily resolved under the facts of the case. See, e.g., *State* v. *Carrasquillo*, 290 Conn. 209, 220, 962 A.2d 772 (2009). In *Labbe* v. *Pension Commission*, supra, 815, the court declined to construe the agreement, which would have bound parties beyond the case, when there was undisputed testimony that allowed us to dispose of the case on narrower grounds that related only to the parties before us.

The defendant also points to *Sobczak* v. *Board of Education*, 88 Conn. App. 99, 107–108, 868 A.2d 112, cert. denied, 273 Conn. 941, 875 A.2d 43 (2005), in which the Appellate Court had held that the trial court improperly failed to dismiss the plaintiff's complaint alleging, inter alia, constructive and wrongful termination because he had not exhausted his remedies by following the grievance procedures pursuant to the collective bargaining agreement. The Appellate Court rejected the plaintiff's claim that resort to the grievance procedure was futile because, although the union president had refused to file a grievance, there was language in the collective bargaining agreement that permitted the plaintiff to initiate a grievance by himself or through someone other than the union. Id., 107. The Appellate Court, however, engaged in no analysis of the term employee as used in the bargaining agreement, and there is nothing in the opinion that suggests that the

plaintiff's status as a former employee played any part in the consideration of the issues. Moreover, as we previously have noted; see footnote 6 of this opinion; a retiree is situated differently than an employee who remains in the workforce but has quit or been fired from his employment.

Finally, we note that, to the extent the trial court relied as a basis for its decision on the plaintiff's failure to plead that he did not have access to the grievance procedure under the agreement, that reliance was improper.[7] The plaintiff alleged that he had retired from the police force and that the defendant subsequently had denied his request to trade in his accumulated sick leave. The plaintiff submitted the agreement, which, by its express terms, limits the grievance procedure to employees in the bargaining unit. "[A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion . . . ." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 108, 967 A.2d 495 (2009).

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.

---

[7] We also disagree with the trial court's rejection of the plaintiff's futility argument on the basis of the allegation in his complaint that the defendant "has allowed other former employees to trade in their accumulated sick time both under the [agreement] and in situations where there was not yet any contractual or collective bargaining agreement requiring it to do so." This allegation, fairly read, does not indicate that these other retirees had obtained that benefit through resort to the grievance procedures. Indeed, it suggests to the contrary.