HOLLY BLINKOFF *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(AC 31777)

Bishop, Espinosa and Borden, Js.

Argued April 18—officially released June 28, 2011

*Holly Blinkoff,* pro se, the appellant (plaintiff).

*Charles Krich,* principal attorney, with whom, on the brief, was *Caroline B. Park,* law student intern, for the appellee (named defendant).

*Nicole D. Dorman,* for the appellees (defendant city of Torrington et al.).

*Opinion*

BISHOP, J. The plaintiff, Holly Blinkoff, appeals from the judgment of the trial court dismissing her administrative appeal from a decision of the defendant, the state commission on human rights and opportunities (commission). The commission determined that the defendants, the city of Torrington (city) and city planner Dana McGuinness, had retaliated against the plaintiff but that she failed to prove that she had incurred compensable damages as a result. On appeal, the plaintiff claims that the trial court improperly (1) failed to consider certain statements and documents in its review and (2) concluded that the commission's presiding human rights referee did not err in determining that the

plaintiff did not prove that she suffered compensable damages. We affirm the judgment of the trial court.

The following undisputed facts are relevant to our consideration of the plaintiff's claims. The plaintiff owned and operated a quarry from which she sold stone, sand and gravel products. On July 13, 1994, the city, through its planning and zoning commission, approved the renewal of the plaintiff's special exception permit and imposed conditions regulating the operation of the quarry, including hours of operation. In October, 1994, McGuinness received a complaint that the plaintiff was operating the quarry outside of the permitted hours, and he issued a cease and desist order in November, 1994. On January 20, 1995, the plaintiff filed an administrative complaint with the commission, alleging that the city and McGuinness had discriminated against her on the basis of her gender and religion.

Thereafter, McGuinness received additional complaints and issued another cease and desist order on July 21, 1995, after personally observing the quarry being operated after hours. On the following day, he observed the same. On August 2, 1995, the city initiated a lawsuit against the plaintiff, seeking a show cause hearing and temporary and permanent injunctions to compel her to comply with the conditions of her permit. While the lawsuit was pending, the city received new complaints regarding the operation of the quarry in August, 1995, and January, April and May, 1996. In July, 1996, the plaintiff's 1994 special exception permit expired. The city advised the plaintiff that it would not purchase any more stone and gravel from her until she had obtained a permit. She continued to operate the quarry without a permit, and the city issued a cease and desist order in August, 1996. The city withdrew its lawsuit in September, 1996.

The plaintiff subsequently applied for renewal of her special exception permit on November 21, 1996. The

city planning and zoning commission held a public hearing on January 8, 1997, and the permit was approved the following month, at which time the city reinstated her as an eligible vendor for city projects. Following the 1997 renewal of her permit, the plaintiff never bid to supply the city with any product, despite twice being invited to submit bids in August, 1997. She sold the quarry in 2000 and ceased doing business.

The following procedural background is also relevant. After the plaintiff filed her administrative complaint with the commission on January 20, 1995, proceedings were stayed pending the resolution of an action she filed in the United States District Court for the District of Connecticut relating to the same allegations. The District Court, Underhill, J., dismissed the state law claims without prejudice, and the balance of her claims proceeded to a jury trial. Following a jury verdict against the plaintiff on her federal law claims and the subsequent dismissal of her appeal to the United States Court of Appeals for the Second Circuit, the commission's presiding human rights referee (referee) granted the city's motion to dismiss the plaintiff's administrative complaint on the grounds of res judicata and collateral estoppel. Thereafter, the Superior Court, *Berger, J.*, dismissed the commission's appeal from the decision of its referee, but this court reversed the judgment and remanded the case to the commission for further proceedings. See *Commission on Human Rights & Opportunities* v. *Torrington*, 96 Conn. App. 313, 901 A.2d 46 (2006).

When administrative proceedings recommenced, the commission filed notice that, at the public hearing, it would pursue only the issue of whether the city and McGuinness had violated General Statutes § 46a-60 (a)

(4)[1] by retaliating against the plaintiff for filing her original complaint with the commission.[2] Following a public hearing, the referee issued a memorandum of decision on August 25, 2008, in which he concluded that the city and McGuinness had retaliated against the plaintiff by initiating the 1995 lawsuit and by delaying their consideration of her special exception permit application from December, 1996, to January, 1997; however, the referee found that she failed to prove that she had incurred damages as a result of the two retaliatory acts. The referee also found that the plaintiff failed to prove that the city had engaged in a retaliatory boycott of her business. Accordingly, the referee ordered the city and McGuinness to cease and desist from any retaliatory action against the parties or any other complainants and to post public notices to its employees concerning discriminatory practices, but the referee made no award of damages. Following the plaintiff's motion for reconsideration, the referee affirmed his decision. The plaintiff's appeal from that decision was dismissed by the Superior Court, *Cohn, J.*, and the plaintiff's subsequent motion for reargument was denied. This appeal followed.

As a preliminary matter, we note that the commission, on behalf of the plaintiff, requests plain error review of two new claims that were not raised in the trial

[1] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has . . . filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[2] The plaintiff's original administrative complaint, filed on January 20, 1995, alleged violations of General Statutes §§ 46a-64 (a) (1) and 46a-58 (a). Subsequently, she amended the complaint on November 19, 1996, to add an allegation that the city had discriminated against her in retaliation for filing the original complaint in violation of § 46a-60 (a) (4).

court.[3] We recognize that, pursuant to General Statutes § 46a-94a (a)[4] and in accord with the rules provided in General Statutes § 4-183, the commission has the statutory right to appeal from the final decision of its own hearing officer. See, e.g., *Commission on Human Rights & Opportunities* v. *Torrington,* supra, 96 Conn. App. 314 n.1 (commission properly was named both appellant and appellee). Mindful of this right of appeal, the commission contends that it may raise claims of administrative error before this court after "sitting out" the plaintiff's appeal to the trial court. We do not agree.

"The commission clearly is empowered by statute to prosecute complaints on issues of public interest but it must strictly comply with the governing statutes and the regulations it has caused to be issued." *Groton* v. *Commission on Human Rights & Opportunities,* 169 Conn. 89, 100, 362 A.2d 1359 (1975). Section 4-183 (a)[5] provides that an administrative appeal from an agency decision may be taken to the Superior Court, not this court. Furthermore, pursuant to General Statutes § 4-184,[6] an administrative appeal from a decision of the

[3] The commission claims that the referee improperly (1) failed to award nominal damages and (2) placed the burden of proving damages on the plaintiff.

[4] General Statutes § 46a-94a (a) provides in relevant part: "The Commission on Human Rights and Opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer . . . may appeal therefrom in accordance with section 4-183. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes § 4-184 provides: "An aggrieved party may obtain a review of any final judgment of the Superior Court under this chapter. The appeal shall be taken in accordance with section 51-197b."

Superior Court is governed by General Statutes § 51-197b,[7] which provides in subsection (a) that appeals from an agency decision "shall be taken to the Superior Court" and in subsection (d) that "there shall be a right to *further review* to the Appellate Court . . . ." (Emphasis added.) See also *Garcia* v. *Hartford,* 292 Conn. 334, 336 n.2, 972 A.2d 706 (2009) (declining to address claim not raised before trial court). In plain terms, no party may obtain review of claims of administrative error in this court without first having sought review in the Superior Court. Consequently, because the commission did not first seek review of these claims in the trial court, we will not consider them now.

We turn next to our standard of review of the plaintiff's claims. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

---

[7] General Statutes § 51-197b provides in relevant part: "(a) Except as provided in section 31-301b, all appeals that may be taken from administrative decisions of officers, boards, commissions or agencies of the state or any political subdivision thereof shall be taken to the Superior Court. . . . (d) Except as provided in sections 8-8, 8-9 and 22a-43, there shall be a right to further review to the Appellate Court under such rules as the judges of the Appellate Court shall adopt. . . ."

prevent an administrative agency's finding from being supported by substantial evidence." (Citation omitted; internal quotation marks omitted.) *Spitz* v. *Board of Examiners of Psychologists*, 127 Conn. App. 108, 115–16, 12 A.3d 1080 (2011). "[A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) Id., 116.

I

The plaintiff first claims that the court improperly failed to consider certain statements and documents in its review and, therefore, abused its discretion in concluding that there was substantial evidence to support the referee's finding that the city did not engage in a retaliatory boycott of the plaintiff's business. We are not persuaded.

The following additional procedural background is relevant to our resolution of this claim. At the agency hearing, in opposition to the plaintiff's allegation that the city had boycotted her business in retaliation for filing her complaint with the commission, the city asserted that it temporarily ceased doing business with the plaintiff because she had failed to renew her special exception permit once it expired in July, 1996. The plaintiff, in rebuttal, alleged that the city's proffered explanation was pretextual given that the city had bought product from similarly situated businesses in the absence of a permit. Following the referee's determination that no retaliatory boycott had occurred, the plaintiff filed a motion for reconsideration claiming,

inter alia, that the referee had failed to consider Iffland Lumber Company (Iffland) as a comparator. She attached exhibits to her motion regarding the nature of Iffland's business as proof of her claim that Iffland was similarly situated. In its decision on reconsideration, the referee declined to consider the attachments because they had not been offered into evidence at the hearing. Then, on the basis of its reconsideration of the record, the referee articulated that "there was conflicting and inconclusive testimony by the witnesses as to the nature of Iffland's business, whether it needed a special exception permit and whether the city had ever issued Iffland a cease and desist order for operating without a permit." The referee concluded that the plaintiff had failed to prove that Iffland was a similarly situated business.

On her appeal to the trial court, the plaintiff filed several "motion[s] to take judicial notice of public documents." She again attached exhibits that were not in evidence at the agency hearing.[8] The court denied the motions in its subsequent memorandum of decision, noting that its review of the agency decision was limited to the record developed before the referee. The court also stated that even if it had the authority to consider the newly offered statements and documents, they would not result in reversal of the referee's decision because, taking the record as a whole, there was substantial evidence to support the referee's determinations.

---

[8] Specifically, the plaintiff included the following documents which had not been admitted into evidence at the hearing: a special exception permit for an unnamed business; testimony from the plaintiff's civil trial in the federal District Court; an assessment of Iffland's unused processing plant printed on the day before the court's memorandum of decision was filed; a 2004 letter from the Mine Safety Health Administration stating that Iffland was on file as an abandoned construction sand and gravel mining facility; minutes from a 1999 city planning and zoning commission meeting; and argument by opposing counsel in her federal trial.

The plaintiff presently contends that the court should have considered these statements and documents under the doctrines of judicial admissions and judicial estoppel. We take this, essentially, to be a claim that the record should be expanded to include information that was not submitted for the consideration of the referee. In so arguing, the plaintiff misapprehends the scope of review of an administrative appeal, which is confined to the record. See General Statutes § 4-183 (i).[9] "[A]lthough we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . For justice to be done . . . any latitude given to pro se litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice." (Citation omitted; internal quotation marks omitted.) *Corriveau* v. *Corriveau*, 126 Conn. App. 231, 238, 11 A.3d 176, cert. denied, 300 Conn. 940, 17 A.3d 476 (2011). Consequently, we conclude that the trial court properly did not consider the newly offered statements and documents.

Additionally, insofar as the plaintiff also claims that the referee and the court disregarded or misinterpreted portions of the record, we agree with the trial court that there is substantial evidence in the record to support the referee's conclusion that the city did not engage in a retaliatory boycott of her business. The plaintiff submitted evidence that the city continued to do business with vendors who had incurred zoning violations, but the referee reasonably concluded that such businesses are not similarly situated to a business that lacks a permit to operate. Although the plaintiff did submit evidence

[9] General Statutes § 4-183 (i) provides: "The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs."

suggesting that the city bought gravel from a vendor whose permit had lapsed, the referee reasonably distinguished this vendor from the plaintiff on the ground that the vendor's application was pending at the time and had only lapsed for a week, whereas the plaintiff had waited five months after the expiration of her permit to file an application for renewal. Additionally, the record reflects that, following the renewal of her permit, the plaintiff was either unable or unwilling to bid on the city's requests for product. The court, therefore, did not err in concluding that the referee reasonably determined on the basis of substantial evidence that the city did not engage in a retaliatory boycott.

## II

The plaintiff's second claim is that the court improperly concluded that the referee did not err in determining that the plaintiff did not prove that she suffered compensable damages as a result of the retaliatory acts.[10] We are not persuaded.

At the public hearing, the plaintiff contended that her business suffered and she had to hire attorneys as a result of retaliation by the city. In his decision, however, the referee found that the plaintiff failed to offer persuasive evidence that her business operations suffered as a result of the city's two acts of retaliation, namely, initiating the 1995 lawsuit and delaying her permit renewal hearing. The referee also concluded that fees paid to attorney Michael Rybak at the time of her permit renewal would have been incurred regardless of the

---

[10] The plaintiff also claims that, by offering an invoice from attorney Doug Evans into evidence, she laid a sufficient foundation to establish that she incurred damages in defending against the city's 1995 lawsuit and that, pursuant to Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 828 A.2d 64 (2003), the referee should have shifted the burden of persuasion to the city to disprove that the invoice was reasonable. Because this claim was not raised before the court, we decline to address it here. See Garcia v. Hartford, supra, 292 Conn. 336 n.2.

delay and that the city, therefore, was not responsible for that cost. Finally, the referee found that the plaintiff failed to substantiate the fees she paid to attorney Doug Evans to defend against the city's lawsuit, given that she adduced only an invoice indicating a carryover balance of $8380 with no billing detail and she failed to procure the attendance of the billing attorney to explain the charges upon the city's request. In light of his finding that the evidence regarding fees was inadequate, the referee did not award any monetary damages.

On appeal, the plaintiff renews her claims for damages from lost sales and fees paid to Rybak and Evans. We address each in turn. First, because we conclude that there was substantial evidence supporting the referee's finding that no retaliatory boycott occurred, her claim of lost sales caused by the alleged boycott logically must fail. Second, the plaintiff incorrectly asserts that the referee declined to consider the Rybak invoice because of the manner in which she marked the exhibit. As he articulated in the decision on reconsideration, the referee did not reject the exhibit but, rather, he concluded that it was irrelevant because the Rybak fees would have been incurred regardless of the retaliatory delay of her permit hearing. Consequently, because the referee reasonably determined that these fees were not incurred as the result of the city's action, this claim also must fail.

Third, the plaintiff's claim for the costs of defending against the city's 1995 lawsuit must fail because she failed to provide a reasonable basis for calculating them. "It is axiomatic that the burden of proving damages is on the party claiming them. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Rossman* v. *Morasco*, 115 Conn. App. 234, 249, 974 A.2d 1, cert. denied, 293 Conn. 923, 980 A.2d

912 (2009). Furthermore, in regard to bills for attorney's fees, "[i]t would be inconsistent with the placement of the burden on the requesting party . . . to allow the requesting party to present an affidavit by the billing attorney in support of the reasonableness of the requested fees, without allowing the opposing party to test that evidence by questioning the affiant under oath." *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 239, 939 A.2d 541 (2008). Here, the plaintiff merely submitted an invoice that indicated a carryover balance and was devoid of detail. She also failed to produce the billing attorney to explain the charges upon the city's request. We conclude, therefore, that the referee correctly applied the law to the facts in finding that the plaintiff failed to provide a sufficient basis for awarding these damages.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] We note that even if the plaintiff had provided adequate evidence relating these claimed fees to the conduct of the city, it is an open question whether the referee would have been empowered under the statutory scheme to award monetary damages. Following a finding of discriminatory conduct, the human rights referee must fashion a remedy pursuant to General Statutes § 46a-86. Our Supreme Court, however, ruled in an employment discrimination case that § 46a-86 does not empower the referee to award compensatory damages or attorney's fees to remedy a violation of § 46a-60, which was the sole statutory basis of the plaintiff's claim in the case at hand. See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 97, 653 A.2d 782 (1995). The question of whether *Bridgeport Hospital* controls in a nonemployment context such as in this case is left for another day.