EDWIN GARCIA *v.* CITY OF HARTFORD ET AL.
(AC 32270)

DiPentima, C. J., and Espinosa and Flynn, Js.

Argued January 9—officially released May 8, 2012

*Robert F. Ludgin,* for the appellant (plaintiff).

*Catherine H. Freeman,* for the appellees (defendants).

### Opinion

FLYNN, J. The plaintiff, Edwin Garcia, appeals from the judgment of the trial court denying his request for damages and the issuance of two writs of mandamus ordering (1) the defendants the city of Hartford treasurer, Kathleen Palm, and the city of Hartford pension commission to allow the plaintiff to apply eighty days of accumulated sick time toward increased pension

benefits and (2) the defendant Santiago Malave, director of personnel for the city of Hartford, to certify the exact amount of accrued sick time the plaintiff had accumulated at the time he resigned as a city employee.[1] On appeal, the plaintiff's sole claim is that the trial court incorrectly determined that the controlling collective bargaining agreement between the city of Hartford (city) and the Hartford police union (union) prohibited the plaintiff from applying eighty accumulated sick days toward a pension benefit enhancement once the plaintiff reached the twentieth anniversary of his hire date. We affirm the judgment of the trial court.

The following facts and procedural history inform our review of the plaintiff's claim. The plaintiff resigned from the Hartford police department (department) after completing over sixteen years of service and accumulating eighty unused sick days. Immediately prior to his resignation on January 24, 1997, the plaintiff was suspended from service from June 28, 1996, until January 3, 1997. When he resigned, the plaintiff was subject to a collective bargaining agreement (agreement) between the city and the union that took effect on July 1, 1994.[2] The agreement awards pension benefit payments to department employees who meet specific service criteria as expressly set forth in the agreement.

At the time the plaintiff resigned from the department, he was ineligible to receive retirement benefits because he had not yet reached the twentieth anniversary of his hire date, as required under the agreement,

[1] The defendants in this action are the city of Hartford, Palm, the city of Hartford pension commission and Malave. For purposes of this opinion, we refer to the defendants collectively as the defendant and individually by name when appropriate.

[2] Although the plaintiff resigned from the department on January 24, 1997, both parties stipulated before trial that the agreement applicable to the plaintiff's claims is for the period July 1, 1994, to June 30, 1996. The court also applied the terms of this agreement to the controversy before it.

which would occur on March 24, 2000.[3] Once the plaintiff began receiving retirement benefits after the twentieth anniversary of his hire date, he requested to trade in accumulated sick time for increased pension benefits. Specifically, the plaintiff requested to trade in eighty sick days for four years of service time. This request was denied by the defendant.

On November 12, 2004, the plaintiff filed a complaint in the Superior Court seeking the issuance of two writs of mandamus and damages. As to the first writ, the plaintiff sought a writ of mandamus ordering Palm and the city pension commission to comply with the agreement between the city and the union by allowing the plaintiff to trade in accumulated sick time for additional pension benefits. As to the second writ, the plaintiff sought a writ of mandamus ordering Malave to certify to Palm and the city pension commission, the exact amount of accrued sick time the plaintiff had accumulated at the time of his resignation as a city employee. On December 8, 2004, the defendant filed an answer and special defenses asserting that an action of mandamus, pursuant to Practice Book § 23-45, "may be brought in an individual right by any person who claims entitlement to that remedy to enforce a private duty owed to that person" and that the defendant "did not owe . . . any private duty to [the] [p]laintiff."

On January 29, 2008, the defendant moved to dismiss the plaintiff's complaint on the basis that the court

---

[3] Both parties stipulated before trial that the plaintiff commenced his service with the department on March 24, 1980, which makes March 24, 2000, the twentieth anniversary of his hire date. March 24, 2000, is also the anniversary date that the court references in its memorandum of decision. We note, however, that the plaintiff's attorney, Frank J. Szilagyi, in a letter to Malave dated April 16, 2004, listed February, 2000, as the twentieth anniversary of the plaintiff's hire date. This discrepancy in dates between the parties' stipulated facts and the April 16, 2004 letter does not alter the court's subsequent finding that the plaintiff completed less than twenty years of continuous service with the department, nor does it affect our analysis.

lacked subject matter jurisdiction because the plaintiff never initiated a grievance procedure, as required under the terms of the agreement, and therefore failed to exhaust his administrative remedies prior to filing his complaint. In response, the plaintiff contended that, because he was no longer an employee, he did not have standing to pursue the grievance procedure and such an attempt to pursue administrative remedies would prove futile. On April 18, 2008, the court, *Bentivegna, J.*, granted the defendant's motion to dismiss on the basis that the court lacked subject matter jurisdiction to adjudicate the dispute. The court reasoned that the plaintiff's argument that pursuit of a remedy via the grievance procedures would prove futile was unavailing in light of the facts that the plaintiff (1) had alleged in his complaint that the defendant had allowed other former employees to trade in their accumulated sick leave and (2) failed to allege that he did not have access to the grievance procedures under the agreement.

The plaintiff timely filed an appeal, and the Supreme Court concluded that the court improperly determined that the agreement could be interpreted to require a retiree to exhaust the administrative remedies available to employees therein. *Garcia* v. *Hartford*, 292 Conn. 334, 336–37, 972 A.2d 706 (2009). Accordingly, the Supreme Court reversed the judgment of the court and remanded the case for further proceedings. Id., 349. A court trial thereafter commenced, and, on April 27, 2010, the court, *Domnarski, J.*, rendered judgment in favor of the defendant after finding the issues of damages and the issuance of the two writs of mandamus for the defendant.

The court made the following factual findings: "The plaintiff resigned from the . . . department after sixteen years of service. On the date of his resignation, the plaintiff was subject to, and a beneficiary of, a collective bargaining agreement between the . . .

union and the city . . . that was in effect for the period of July 1, 1994, to June 30, 1996 . . . .

"Prior to terminating his employment, the plaintiff had accumulated eighty sick days as a Hartford police officer. At the time the plaintiff terminated his employment, he was not yet eligible to receive retirement benefits because he had not yet reached the twentieth year of his hire date, which would occur on March 24, 2000. The agreement contains a provision that allows accumulated sick time to be traded in for increased pension benefits. After the plaintiff began receiving retirement benefits, he requested to trade in accumulated sick time for increased pension benefits. Specifically, the plaintiff requested to trade in eighty sick days for four years of service time for increased pension benefits. The request was refused by the defendant."

In its review of the agreement, the court cited certain provisions of article III, § 3.6, which sets forth the criteria for awarding pensions. Article III, § 3.6, paragraph 3 of the agreement provides: "Normal retirement shall be after twenty (20) years of continuous service. Employee pension benefits shall be vested after ten (10) years of continuous service." Article III, § 3.6, paragraph 4 provides: "An employee who vests his or her pension and leaves the service of the [c]ity will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date." Article III, § 3.6, paragraph 8 provides in relevant part: "Effective July 1, 1994, an employee whose retirement becomes effective on or after that date, may upon retirement, and prior to any formula reduction, exchange a portion of his or her accumulated sick leave for up to four (4) years (in whole years only) of additional pension service time for the purpose of computing the amount of his or her retirement allowance provided, however, such additional service time shall not be used for establishing eligibility for normal

retirement benefits, but shall be used as additional service credits for employees who are qualified or become qualified for normal/disability retirement benefits. . . ."

The court then analyzed these provisions in light of the plaintiff's claim that the agreement permitted him to exchange accumulated sick time upon reaching the twentieth anniversary of his hire date to increase his pension benefits. Although the court agreed that the plaintiff was entitled to collect pension benefits under article III, § 3.6, paragraphs 3 and 4, it nonetheless observed that the accumulated sick time exchange provision of article III, § 3.6, paragraph 8 applied only to employees who are qualified or become qualified for normal/disability retirement benefits. The court further observed that employees must complete a minimum of twenty years continuous service to qualify for normal retirement benefits, and the plaintiff, who had completed only sixteen years of service, failed to qualify for normal retirement benefits. The court therefore determined that the plaintiff was not included in the class of employees who were authorized to use the sick time exchange because he did not qualify for normal retirement/disability benefits. Consequently, the court concluded that the clear and unambiguous language of the agreement did not allow the plaintiff to exchange accumulated sick time for increased pension benefits. This appeal followed.

The plaintiff's only claim in this appeal is that the court incorrectly concluded that the agreement prohibits him from exchanging his accumulated sick time in return for increased pension benefits. The plaintiff concedes that the agreement is unambiguous and that the court applied the relevant sections of the agreement in rendering its decision. The plaintiff disputes, however, the court's interpretation and conclusions concerning those sections.

We begin by setting forth the applicable law and standard of review. "In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . In determining whether the trial court abused its discretion, [an appellate] court must make every reasonable presumption in favor of its action. . . . Nevertheless, [an appellate] court will overturn a lower court's judgment if it has committed a clear error or if it has misconceived the law. . . .

"A writ of mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . [The court's discretion] will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Citations omitted; internal quotation marks omitted.) *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 412, 898 A.2d 157 (2006).

"Principles of contract law guide our interpretation of collective bargaining agreements." *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review." (Internal quotation marks omitted.) Id., 711.

The intent of the parties as expressed in a contract "is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . .

the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000).

Our plenary review of the agreement reveals that its terms are not ambiguous. We conclude that the court properly determined that the plaintiff did not qualify to exchange his accumulated sick time in return for increased pension benefits. Consequently, we determine that the court properly denied the plaintiff's request for a writ of mandamus to compel the defendant to allow him to exchange his accumulated sick time because he has not satisfied the requirements for mandamus and he did not show a clear legal right as to his benefits.

Before reaching the issue of whether the plaintiff is eligible to exchange his accumulated sick time for increased pension benefits, we first must examine how the plaintiff became eligible to receive his pension benefits under the agreement. The preamble to article III, § 3.6, of the agreement makes clear that pension and survivor benefits apply to all sworn police officers who retire effective on or after July 1, 1994. Article III, § 3.6, paragraph 3 provides that normal retirement shall be after twenty years of continuous service and that employee pension benefits shall vest after ten years of continuous service. Finally, article III, § 3.6, paragraph 4 expressly provides that "[a]n employee who vests his or her pension and leaves the service of the [c]ity will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date." On the basis of the foregoing, the

plaintiff was entitled to receive pension benefits on the twentieth anniversary of his hire date. He was a sworn police officer who retired after completing just over sixteen years of service on January 24, 1997. As such, his pension benefits vested after his tenth year of continuous service, and he began receiving his pension benefits on his normal retirement date, which is the date that would have marked his twentieth year of service, on March 24, 2000.

Having explained the plaintiff's eligibility to receive pension benefits under the agreement, we now turn to his claim that the agreement allows someone in his position to exchange accumulated sick time for increased pension benefits. Resolution of the plaintiff's claim turns on whether he qualified or became qualified to receive normal retirement benefits. The agreement only allows those who qualify or become qualified for normal retirement benefits to participate in the accumulated sick time exchange for increased pension benefits. We conclude that although the plaintiff qualified to receive *pension* benefits, he did not qualify or become qualified to receive *normal retirement* benefits.

The controlling language of the agreement pertaining to the exchange of accumulated sick time for increased pension benefits appears in article III, § 3.6, paragraph 8 of the agreement, which provides in relevant part: "Effective July 1, 1994, an employee whose retirement becomes effective on or after that date, may upon retirement . . . exchange a portion of his or her accumulated sick leave for up to four (4) years . . . of additional pension service time . . . however, such additional service time . . . *shall be used as additional service credits for employees who are qualified or become qualified for normal/disability retirement benefits.*" (Emphasis added.) This provision makes expressly clear that only employees who are qualified or become qualified for *normal/disability retirement*

*benefits* are eligible to exchange their accumulated sick time for increased pension benefits. Furthermore, article III, § 3.6, paragraph 3 explicitly defines normal retirement as occurring "after twenty (20) years of continuous service." Because the plaintiff completed less than the twenty years of continuous service necessary to qualify for normal retirement benefits, he is prohibited from exchanging his accumulated sick time for increased pension benefits under article III, § 3.6, paragraph 8.

The plaintiff nonetheless claims that he remains eligible to exchange his accumulated sick time for increased pension benefits under the "become qualified for normal/disability retirement benefits" clause in article III, § 3.6, paragraph 8 of the agreement. The plaintiff argues that, although he lacked the twenty years of continuous service to qualify initially for normal retirement benefits, he later became qualified for them when he reached the twentieth anniversary of his hire date four years after his resignation. We disagree with the plaintiff's interpretation of the "become qualified" clause because he misconstrues the definition of normal retirement as defined in the agreement.

The agreement defines normal retirement as occurring after twenty years of continuous service. Specifically, article III, § 3.6, paragraph 3 of the agreement unambiguously provides in relevant part: "Normal retirement shall be after twenty . . . years of continuous service. . . ." Nothing in the agreement modifies or alters this definition of "normal retirement." A fair and reasonable construction of the language of article III, § 3.6, paragraph 8 would lead to the interpretation that an employee qualifies for normal retirement benefits because he already has completed twenty years of continuous service, or he *becomes qualified* at a future point in time *when* he completes his twentieth year of continuous service. "Where the language of the contract

is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 183, 2 A.3d 873 (2010).

"Normal retirement" also appears in article III, § 3.6, paragraph 4 of the agreement, but in the context of establishing a specific date at which an employee can begin collecting pension benefits. That paragraph allows an employee whose pension benefits vest after ten years of continuous service to begin collecting his pension benefits commencing on the date he would have reached his normal retirement, which would be twenty years from his hire date. Article III, § 3.6, paragraph 4 of the agreement provides: "An employee who vests his or her pension and leaves the service of the [c]ity will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date." Although the plaintiff was entitled to and did begin collecting his pension benefits on the date that he would have reached his normal retirement, he nonetheless cannot be considered to have qualified for normal retirement benefits on that date because he still resigned well short of the required twenty years of continuous service that article III, § 3.6, paragraph 3 requires. A fair and reasonable construction of "normal retirement" in this paragraph leads to the conclusion that its sole use in the paragraph is to mark the twenty year point in time from an employee's hire date and not to confer "normal retirement" status on employees who fail to complete twenty years of continuous service.

Finally, the plaintiff contrasts the existence of certain language in article V, § 5.3, of the agreement with the absence of such language in article III, § 3.6, paragraph 8 for the proposition that this absence in article III, § 3.6, paragraph 8 indicates that the plain meaning of

that section allows him to exchange his accumulated sick time for increased pension benefits.

Article V, § 5.3, of the agreement provides in relevant part: "The [c]ity will pay an employee 50 percent of his accumulated sick leave upon his retirement. No payment will be made to an employee who vests his pension benefits and collects a benefit commencing other than at termination of service." The second sentence makes expressly clear that an employee who vests his pension and collects a benefit subsequent to his separation from service to the city cannot receive payment for unused sick time.

Article III, § 3.6, paragraph 8 of the agreement provides in relevant part that the accumulated unused sick days which may be exchanged "shall be used as additional service credits for employees who are qualified or become qualified for normal/disability retirement benefits." The plaintiff argues that the "become qualified" language in article III, § 3.6, paragraph 8 has to be given meaning and effect in any fair construction of the terms of the agreement.

The plaintiff argues that article III, § 3.6, paragraph 8 lacks the language found in article V, § 5.3, foreclosing unused sick time credits to persons who start collecting pension benefits at a time other than their separation from service to the city. He therefore contends that he is permitted to exchange his unused sick time for increased pension benefits once he started receiving benefits following his resignation from the department. We disagree.

"[A reviewing court] will not import terms into [an] agreement . . . that are not reflected in the contract." *Gibson* v. *Capano*, 241 Conn. 725, 732, 699 A.2d 68 (1997). The unambiguous terms of article III, § 3.6, paragraph 8 make clear that only those employees who

qualify or become qualified for normal retirement benefits may exchange their accumulated sick time for increased pension benefits. As explained previously, the plaintiff was ineligible to exchange his accumulated sick time under this provision because he failed to complete twenty years of continuous service with the department. "When the plain meaning and intent of the language is clear, a clause in a written [agreement] cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 232, 654 A.2d 342 (1995). The relevant language of article III, § 3.6, paragraph 8 states simply that the accumulated sick time exchange "shall be used as additional service credits for employees who are qualified or become qualified for normal/disability retirement benefits." Although that paragraph does not contain express prohibitory language analogous to that in article V, § 5.3, it also does not contain express permissive language allowing employees who receive benefits subsequent to separation from service to the city and without twenty years of continuous service to participate in the sick time exchange.

Instead, the key distinguishing feature of article III, § 3.6, paragraph 8 is made through the use of the word "normal" to modify "retirement benefits." Had the agreement intended to include the plaintiff in the class of employees eligible to participate in the exchange, it simply would have omitted the word "normal" thereby allowing any employee who qualified or later became qualified for retirement benefits to participate in the exchange. Inserting the word "normal" immediately prior to "retirement benefits," however, signals a clear intent that only those employees who qualified or become qualified in the future for normal retirement

benefits, after twenty years of continuous service as defined in article III, § 3.6, paragraph 3, are eligible for the exchange.

On the basis of the foregoing analysis, we conclude that the plaintiff's completion of just over sixteen years of continuous service renders him ineligible to qualify or to later become qualified to receive normal retirement benefits. Consequently, the court properly determined that the plaintiff cannot exchange his accumulated sick time for increased pension benefits under the terms of article III, § 3.6, paragraph 8 of the agreement. This determination by the court justified its decision not to award damages and to deny the plaintiff's request to issue a writ of mandamus ordering the defendant to allow the plaintiff to exchange his accumulated sick time for additional pension benefits.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The court's determination that the plaintiff was ineligible to participate in the accumulated sick time exchange pursuant to article III, § 3.6, paragraph 8 renders it unnecessary for this court to determine whether the court improperly denied the defendant's request for a writ of mandamus to certify the exact amount of sick time the plaintiff had accrued at the time of his resignation as a city employee. Any certified sick time that the plaintiff accrued is irrelevant in light of the agreement's prohibition on sick time exchange for employees, such as the plaintiff, who do not qualify for normal retirement benefits.