******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE KATHERINE H.*
(AC 41248)
IN RE JAMES H.
(AC 41249)

DiPentima, C. J., and Lavine and Bear, Js.

*Syllabus*

The respondent mother appealed to this court from the judgments of the
trial court, which adjudicated her minor children neglected and commit-
ted them to the custody of the petitioner, the Commissioner of Children
and Families. The trial court found, inter alia, that the respondent had
experienced episodic psychotic delusional thinking and that the children
had been permitted to live under conditions, circumstances or associa-
tions injurious to their well-being, and that they were denied proper
care and attention, physically, educationally, emotionally or morally.
On appeal, the respondent challenged the manner in which the Depart-
ment of Children and Families performed its responsibilities and the
trial court's factual findings. *Held* that the respondent had not demon-
strated that any of the trial court's findings were clearly erroneous or
that the court had abused its discretion in committing the children to
the petitioner's custody in the interest of the children's sustained growth,
development, well-being, and in the continuity and stability of their
environment, and, accordingly, the trial court's judgments were affirmed.

Argued June 1—officially released July 6, 2018**

*Procedural History*

Petitions by the Commissioner of Children and Fami-
lies to adjudicate the respondents' minor children
neglected, brought to the Superior Court in the judicial
district of New London, Juvenile Matters at Waterford,
where the court, *Driscoll, J.*, issued ex parte orders of
temporary custody and removed the minor children
from the respondents' care; thereafter, the matters were
transferred to the judicial district of Windham, Child
Protection Session at Willimantic; subsequently, the
court, *Hon. Francis J. Foley III*, judge trial referee,
sustained the orders of temporary custody; thereafter,
the matters were transferred to the judicial district of
New London, Juvenile Matters at Waterford, and tried
to the court, *Hon. Michael A. Mack*, judge trial referee;
judgments adjudicating the minor children neglected
and committing the minor children to the custody of
the petitioner, from which the respondent mother
appealed to this court. *Affirmed.*

*Ann C.*, self-represented, for the appellant (respon-
dent mother).

*Christopher L. Aker*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney gen-
eral, and *Benjamin Zivyon*, assistant attorney general,
for the appellee (petitioner).

*Ellin M. Grenger*, for the minor children.

*Opinion*

PER CURIAM. In these consolidated appeals, the self-represented respondent mother, Ann C.,[1] appeals from the judgments of the trial court finding her minor children, Katherine H. and James H., neglected and committing them to the custody of the petitioner, the Commissioner of Children and Families.[2] On appeal, the respondent essentially takes issue with the manner in which the Department of Children and Families (department) performed its responsibilities and the court's factual findings.[3] We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of the respondent's appeals. The department became involved with the respondent on November 20, 2015, after it received a Careline[4] call from a clinician who reported that the respondent was the caretaker of two young children and that she presented a risk of harm to them given her psychotic thoughts, delusional thinking and consumption of large quantities of wine. The respondent had been employed by Electric Boat Division of General Dynamics Corporation (Electric Boat), but in May, 2016, the yard psychiatrist found her to be unfit for duty. Electric Boat referred her for a psychiatric evaluation, but the evaluation never took place given the terms the respondent wanted placed on the conditions of the evaluation. Between November, 2015, and November 30, 2016, the department made efforts for the respondent to undergo a psychiatric evaluation, to enter psychotherapy, and to comply with medication management. Its efforts were unsuccessful. Therapists to whom the respondent was referred expressed concern about her delusional thinking and consumption of alcohol. The court, *Hon. Michael A. Mack*, judge trial referee, found that the respondent does not acknowledge that she has mental health issues or that she needs help.

On August 5, 2016, the petitioner filed the neglect petitions at issue.[5] Before the neglect petitions were adjudicated, however, on December 1, 2016, the petitioner filed ex parte motions for orders of temporary custody of the children. On that same day, the court, *Driscoll, J.*, granted the ex parte motions for temporary custody.[6]

A contested hearing on the motions for temporary custody was held on December 14, 2016. The trial court, *Hon. Francis J. Foley III*, judge trial referee, issued a memorandum of decision on December 16, 2016, in which it sustained the orders of temporary custody. In his decision, Judge Foley disagreed with the respondent's contention that the court was required to find predictive neglect in order to sustain the orders of temporary custody.[7] He also made detailed factual findings as to the department's efforts on behalf of the respon-

dent, as well as the findings and recommendations of therapeutic providers regarding the respondent's delusional thinking, alcohol consumption, and the risk she posed to the children. The court found that the respondent was aware that she risked losing custody of the children. The court found that the children were in immediate physical danger due to the respondent's delusional disorder and abuse of alcohol and concluded that their removal from the respondent's care was necessary to ensure their safety. The respondent did not appeal from the judgments granting the motions for temporary custody.

On December 5, 2017, following a contested hearing on the neglect petitions, *Hon. Michael A. Mack*, judge trial referee, found "by a fair preponderance of the evidence that the children had been permitted to live under conditions, circumstances or associations injurious to their well-being and that they were being denied proper care and attention, physically, educationally, emotionally or morally. As noted by Judge Foley . . . the court is not required to, nor should it, wait until an actual catastrophe occurs involving the children or either of them. There is significant evidence that under the circumstances before the [orders of temporary custody], it was only a question of time before an act or actual happening of neglect occurred. Living in the presence of actual delusional thinking and acting is itself a condition of negligence and/or neglect. No credible evidence was offered demonstrating that there has been a significant improvement in [the respondent's] situation."[8] Moreover, the respondent did not acknowledge that she had mental health issues or that she needed help.

Judge Mack also found pursuant to the evidence presented by the petitioner that "[o]n May 24, 2016, [the respondent's] therapist contacted the Careline to report that [the respondent] was experiencing psychotic thoughts. The therapist felt that [the respondent] having episodic psychotic delusional thinking might be a problem for the children, as she was the only caregiver for the children, and her warped thinking could create a situation that may be dangerous for the children.

"On May 25, 2016, [the department's] Regional Resource [licensed clinical social worker], Lorraine Fleury, was consulted and completed an assessment of [the respondent's] mental health status. She found that [the respondent] . . . had multiple delusions that are paranoid and persecutory in nature and that [the respondent] presents as anxious and hypervigilant. Additionally . . . Fleury assessed [the respondent] to be almost completely consumed and distracted by numerous paranoid and persecutory delusions, which prevents her from attending to her children's emotional and, eventually, their physical needs."[9] (Internal quotation marks omitted.)

The court found by a fair preponderance of the evidence that the children have been permitted to live under conditions, circumstances or associations injurious to their well-being and that they were being denied proper care and attention, physically, educationally, emotionally or morally. In other words, it found that the children had been neglected prior to the entry of the ex parte orders of temporary custody in favor of the petitioner.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Michael L.*, 56 Conn. App. 688, 692–93, 745 A.2d 847 (2000).

On appeal, the respondent has not demonstrated to us that any of the court's findings are clearly erroneous. She also has not demonstrated that the court abused its discretion by committing the children to the custody of the petitioner in the interest of the children's "sustained growth, development, well-being, and in the continuity and stability of [their] environment." (Internal quotation marks omitted.) *In re Diamond J.*, 121 Conn. App. 392, 397, 996 A.2d 296, cert. denied, 297 Conn. 927, 998 A.2d 1193 (2010).

The judgments are affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 6, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also granted the neglect petitions with respect to the respondent father, Aaron H., who resides in the state of Washington. He has taken no position with respect to the present appeals and asked to be excused from filing a brief and attending oral argument. In this opinion, we refer to the respondent mother as the respondent.

[2] Counsel for the children has adopted the brief filed by the petitioner.

[3] On appeal, the respondent claims that (1) it is the responsibility of the department to follow the practices and procedures of state and federal governments, as well as its own policies, (2) the department's responsibility to employ reasonable efforts for the reunification of families is in question, (3) psychiatric evaluations submitted by the respondent and the petitioner vary significantly enough to shed doubt on the elevated nature of the findings of David Mantell, a forensic psychologist, (4) the law references used by the court, *Hon. Francis J. Foley III*, judge trial referee, and the court, *Hon. Michael A. Mack*, judge trial referee, are not valid as they cannot be applied to the present case, (5) the respondent's request to record psychiatric evaluations displays a rational logic to preserve her right to accountability, (6) the validity of the allegations made in regard to the educational, health, and general care of the children are invalid, (7) the accusation that the respondent

is delusional due to her belief of potential privacy intrusion is unrealistic, and (8) due diligence was not exhibited by the legal representatives of the respondent, either retained or assigned.

There is no record regarding the respondent's claim that the representation of her counsel was deficient. We, therefore, decline to review it. See Practice Book § 61-10 (a).

[4] Careline is a department telephone service that mandatory reporters and others may call to report suspected child abuse or neglect.

[5] The neglect petitions were filed pursuant to General Statutes §§ 46b-120 (6) (B) and (C). The petitions alleged the following jurisdictional facts: the respondent is experiencing psychotic thoughts and delusional thinking, her nurse practitioner states that the respondent does not believe that she is delusional and is only complying with treatment to get the department to close the case, the respondent admitted to drinking a "magnum" of wine at a time, and the respondent has not cooperated with a psychiatric evaluation. The petitions alleged that the children were neglected for reasons other than being impoverished in that they were being denied care and attention, physically, educationally, emotionally or morally, or were being permitted to live under conditions, circumstances or associations injurious to their well-being.

The petitions were accompanied by an affidavit in which the respondent's social worker, Michael Earley, averred in part that "the children are in need of a stable and competent caregiver who can discern between what is real and what is imagined. It has been reported to the [d]epartment that [the respondent] is isolating her children from their maternal grandparents with whom they share the residence . . . which inhibits the full compliance with the safety plan to ensure the children's well-being and safety. . . . As of this writing, [the respondent] has one calendar year of documented noncompliance. As of 11/30/16, the children's safety net with regard to supervision will no longer be available, which places them at great risk of harm."

[6] Judge Driscoll granted the ex parte motions for orders of temporary custody on the ground that the children were in immediate physical danger from their surroundings and, as a result of said conditions, the children's safety was endangered and immediate removal from such surroundings was necessary to ensure the children's safety, and that remaining in the home was contrary to the children's welfare. The court ordered that temporary care and custody of the children vest in the petitioner and that reasonable efforts to prevent or eliminate the need for removal of the children had been made by the department. The court scheduled a hearing on the temporary custody motions and ordered the respondent to appear.

[7] Judge Foley quoted language from this court, noting that "[o]ur statutes clearly permit an adjudication of neglect based on a potential for harm or abuse to occur in the future. General Statutes § 17a-101 (a) provides: The public policy of this state is . . . [t]o protect children whose health and welfare may be adversely affected through injury and neglect . . . . By its terms, § 17a-101 (a) connotes a responsibility on the state's behalf to act before the actual occurrence of injury or neglect has taken place.

"General Statutes [Rev. to 1999] § 46b-120 (8) provides that a child . . . may be found neglected who . . . (C) is being permitted to live under conditions, circumstances or associations injurious to his well being . . . . The department, pursuant to the statute, need not wait until a child is actually harmed before intervening to protect that child. General Statutes § 46b-129 (b) permits the removal of a child from the home by the department when there is reasonable cause to believe that (1) the child . . . is in immediate physical danger from his surroundings and (2) that as a result of said conditions, the child's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's safety . . . . This statute clearly contemplates a situation where harm could occur but has not actually occurred." (Emphasis omitted; internal quotation marks omitted.) *In re Michael D.*, 58 Conn. App. 119, 123–24, 752 A.2d 1135, cert. denied, 254 Conn. 911, 759 A.2d 505 (2000).

Judge Foley further noted that the authority to issue an order of temporary custody is similar to statutes regarding findings of neglect, but not identical. Practice Book § 33a-6 (a) provides in relevant part: "If the judicial authority finds . . . that there is *reasonable cause to believe* that: (1) the child . . . is suffering from serious physical illness or serious physical injury or *is in immediate physical danger* from his or her surroundings and (2) that as *a result of said conditions*, the child's . . . safety is endangered and *immediate removal from such surroundings is necessary to ensure the child's . . . safety*, the judicial authority shall . . . issue an order [of temporary

custody].” (Emphasis added.)

   [8] The court denied the respondent’s motion to vacate the orders of temporary custody.

   [9] Judge Foley made similar findings in his December 16, 2016 memorandum of decision in which he sustained the orders of temporary custody.

———————————————