******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

L. D. *v.* COMMISSIONER OF CHILDREN
AND FAMILIES*
(AC 45323)

Alvord, Cradle and Suarez, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dismissing his administrative appeal from the decision of a hearing
officer of the defendant Commissioner of Children and Families, who
upheld the Department of Children and Families' decision to substantiate
allegations of emotional neglect by the plaintiff against three of his minor
children stemming from two incidents. The plaintiff and the children's
mother had recently been involved in contentious dissolution proceed-
ings and the police and the department were called multiple times
to address family relations. The two incidents involved the plaintiff's
interactions with his three children during his visits with them. In the
first incident, the plaintiff, when picking the children up from their
mother's house, had an irate reaction upon learning of a missing bag
he asked one child to bring with him, exited the car and began screaming
and cursing, drove his car out of the driveway while one of his children's
doors remained open, and proceeded to drive with the children in an
erratic and dangerous manner. In the second incident, the plaintiff was
in his vehicle with his three children as passengers, became angry and
hit one child's arm, eventually dragging the child out of the car, and
subsequently hit another child in the face when she intervened, which
resulted in bruising and scratches on the children. The plaintiff claimed
that the court improperly concluded that there was substantial evidence
in the record to support the findings of emotional neglect. *Held* that
the trial court properly dismissed the plaintiff's administrative appeal
and determined that the hearing officer did not act unreasonably, arbi-
trarily, illegally, or in abuse of her discretion in upholding the depart-
ment's substantiation of the allegations of emotional neglect, as a review
of the record revealed substantial evidence to support the hearing offi-
cer's findings and conclusions regarding the two allegations of emotional
neglect as to the plaintiff's children; as to the first incident, the hearing
officer emphasized that the children provided credible, consistent
reports about what happened in the car that day and that one child's
emotional response during her account of the incident was persuasive
and lent additional credibility to the report, and, although the hearing
officer's balanced approach acknowledged evidence that the children's
mother fueled both the plaintiff's ire and the children's fear, she stated
that the children were justifiably frightened and concluded that the
plaintiff's conduct clearly demonstrated a serious disregard for the chil-
dren's emotional well-being; in the second incident, the hearing officer
noted that the plaintiff had engaged in a pattern of erratic and bullying
behaviors that had intimidated and frightened his children on a repeated
basis, his rage frightened his children, and the children had repeatedly
told investigators that they were afraid of him, and, even though the
hearing officer acknowledged evidence that the children's mother had
contributed to the children's feelings, she concluded that the plaintiff's
inability to restrain his anger had negatively impacted his relationship
with his children and caused them trauma.

Argued November 9—officially released December 27, 2022

*Procedural History*

Administrative appeal from the decision of the defen-
dant upholding the decision of the Department of Chil-
dren and Families to substantiate allegations of emo-
tional neglect by the plaintiff against certain of his minor
children, brought to the Superior Court in the judicial
district of New Britain and tried to the court, *Cordani,
J.*; judgment dismissing the appeal, from which the

plaintiff appealed to this court. *Affirmed.*

*L. D.*, self-represented, the appellant (plaintiff).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Kim Mathias*, assistant attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff father, L. D., who is self-represented in this court,[1] appeals from the judgment of the trial court dismissing his appeal from the decision of a hearing officer of the Department of Children and Families (department),[2] who upheld the department's decision to substantiate allegations of emotional neglect by the plaintiff against three of his children. On appeal, the plaintiff claims that the trial court improperly concluded that there was substantial evidence in the record to support the findings of emotional neglect.[3] We affirm the judgment of the trial court.

The following facts, as found by the hearing officer, and procedural history are relevant to this appeal. The plaintiff previously was married to the mother of his six children (children's mother). The children were born between the years of 2000 and 2008. In early 2016,[4] after seventeen years of marriage, the children's mother filed an action to dissolve the marriage, and the ensuing dissolution proceedings were very contentious. Throughout the course of the dissolution proceedings, the police and the department were called multiple times "to deal with difficulties in the family's internal relations . . . ." Additionally, several complaints concerning the plaintiff's conduct, primarily asserted by the children's mother, were made to the police and the department.

The department received its first referral concerning the family on February 6, 2016 (February, 2016 incident), after the local police went to the family's residence after receiving a 911 hang up call from that residence. Upon arriving at the home, the police determined that the parents were engaging in a verbal altercation. The children's mother reported that the argument began when the plaintiff became angry at one of their children for wearing shoes in the house and the children's mother became upset because the plaintiff was yelling at the children, so she brought all six of the children into a bedroom. The plaintiff followed the children's mother into a back room, recorded the incident, and, at some point, called the police. The children's guardian ad litem,[5] who later watched the recording, reported that the recording depicted both parents yelling at each other and that one of the children had spat on the plaintiff. The plaintiff was arrested that evening on a charge of disorderly conduct. He was subsequently charged with risk of injury to a child, and, related to those charges, "[p]rotection orders were issued." The criminal charges against the plaintiff were dismissed after he completed a diversionary domestic violence program.

On July 3, 2018, the children's mother complained to the police about an incident that occurred on June 27, 2018, when the plaintiff picked up his three youngest

children, with whom he was participating in court-ordered visitation, from their mother's residence. The plaintiff previously had asked one of those children, A, to bring with him a particular bag that the plaintiff had left in the home. A failed to bring the bag and told the plaintiff that it was not in the home. The plaintiff became enraged, which caused him to yell at the children, bang on the steering wheel, and drive his vehicle, containing the three children, in an erratic and dangerous manner (July, 2018 incident).[6]

A separate referral was made to the department after the July, 2018 incident. During the department's investigation into the incident, the three children, and one child who was at home and witnessed the incident, all reported that the plaintiff became irate upon learning of the missing bag, got out of the car, and began screaming and cursing. Additionally, they all reported that one of the children, S, attempted to get out of the car and that the plaintiff drove the car out of the driveway while her door remained open. While explaining the event to a department investigator, S began crying. The plaintiff acknowledged that there was a disagreement over the bag but felt that A was lying about the availability of the bag because they had discussed it the night before. Additionally, the plaintiff believed that the bag was in the home and that the children's mother had prevented the children from taking the bag.

On September 5, 2018, the department's Careline[7] received a referral alleging that the plaintiff had hit two of his children, A and S, and left bruises and scratches on them during a visit two days prior (September, 2018 incident). At the time of the September, 2018 incident, the plaintiff was in the driver's seat of his vehicle, A was in the front passenger seat, and S was in the backseat with her sister, A. A. During the department's investigation of the September, 2018 incident, S had a healing bruise under her left eye. S reported that the plaintiff was angry because the children were not wearing sneakers, she saw the plaintiff hit A, she got between them and was hit in the face, and that A. A. was crying. A reported that the plaintiff was upset because he did not like what A and S were discussing and wanted them to talk about something else. When they stopped speaking altogether, the plaintiff became angry and hit A on the arm, and later dragged A out of the car, scratching his arm. Additionally, A reported that the plaintiff hit S "when she tried to get between [A] and [the plaintiff]." A. A. reported that she did not see the plaintiff hit A, but did see the plaintiff hit S. The day after the September, 2018 incident, the children were taken to their pediatrician who concluded that the marks on the children were consistent with their explanations, however, the pediatrician did not immediately make a referral to the department based on her observations. The plaintiff was arrested and charged with three counts of risk of injury to a child, two counts of assault in the third

degree, and criminal mischief in the third degree following the September, 2018 incident.

Following its investigation into the February, 2016 incident, the department substantiated the allegations of emotional neglect against the plaintiff as to his six children. Additionally, following the July, 2018 incident, the department substantiated the allegations of emotional neglect related to that incident against the plaintiff as to his three youngest children. Finally, following the September, 2018 incident, the department substantiated the allegations of physical abuse as to S and A, substantiated the allegations of emotional neglect of the three youngest children, and recommended that the plaintiff's name be placed on the Central Registry of Persons Responsible for Child Abuse and Neglect (central registry). Thereafter, the plaintiff requested an administrative hearing to appeal from the substantiations and central registry determination.

An administrative hearing was scheduled for October 14, 2020, and rescheduled at the plaintiff's request for December 16, 2020. Prior to the rescheduled hearing, the plaintiff requested that the issues be adjudicated on the papers and both parties submitted documentary evidence for review by the hearing officer in making her determination.

On December 24, 2020,[8] following a thorough review of the eighteen exhibits submitted by the parties, the hearing officer issued her written decision. Concerning the February, 2016 incident, the hearing officer reversed the department's substantiation of the allegations of emotional neglect against the plaintiff as to his six children. In her decision, the hearing officer emphasized the fact that "[t]he children were not interviewed during this investigation" and "there was no evidence presented by the department as to the children's impressions or responses to this incident." Rather, the hearing officer highlighted that "[t]he department's findings are all predicated on the [children's] mother's complaints and the charges filed against the [plaintiff], all of which were subsequently dismissed following [his] successful completion of a [diversionary] program." After summarizing the relevant facts, the hearing officer concluded that "[i]t is certainly possible that all six children heard the diatribe, and perhaps all six children observed it as well. It is equally possible that all six children were terrified and traumatized. However, the department has not established any of those scenarios with a preponderance of the evidence, and therefore, the allegations of emotional neglect must be reversed."

Concerning the July, 2018 incident, the hearing officer upheld the department's decision to substantiate the allegations of emotional neglect against the plaintiff as to his three youngest children. In reiterating the facts, the hearing officer emphasized "that the children provided consistent reports about what happened in the car

that day," noted that "[t]he [plaintiff's] erratic behavior placed them at physical risk during the drive . . . [and] [t]he children were justifiably frightened," and stated that "[S's] emotional response during her account of the incident [was] persuasive and lends additional credibility to the report." Notably, the hearing officer recognized "that the children's mother fueled both the [plaintiff's] ire and the children's fear during this period . . . [h]owever, in this case, the children's disclosures were consistent and believable." Therefore, the hearing officer concluded that "[t]he [plaintiff's] conduct clearly demonstrated a serious disregard for the children's emotional well-being and the allegations of emotional neglect are therefore upheld."

Concerning the September, 2018 incident, the hearing officer reversed the department's decision to substantiate the allegations of physical abuse as to S and A, but upheld the department's decision to substantiate the allegations of emotional neglect as to the plaintiff's three youngest children. Regarding the allegations of physical abuse, the hearing officer noted that "[p]arents have the right to utilize corporal punishment for discipline of their children . . . [and] [i]njuries that result from the physical discipline are not always considered to be abusive." Additionally, the hearing officer stated that, in making a determination as to whether the physical discipline rose to the level of physical abuse, "the department must consider the parent's motive, the amount of force used, and whether or not the child is able to understand the reason for the discipline." The hearing officer emphasized that the report containing evidence of the children's injuries did not describe them with specificity; "[t]he children's pediatrician was apparently not so alarmed that she immediately felt compelled to file a report with the department"; and the rationale for the plaintiff's behavior was missing or inconsistent, in that A and S provided different reasons for why the plaintiff became angry, which was "an essential element in determining the reasonableness of his discipline." In summarizing the allegations as to A, the hearing officer stated that "[t]he evidence is not sufficient . . . to conclude that [A] suffered any injury from being struck" by the plaintiff and that the injuries sustained by A when the plaintiff "attempted to forcibly remove [A] from the car . . . were likely minor . . . ." In discussing the allegations as to S, the hearing officer stated that "[t]he evidence supports the finding that the [plaintiff] struck [S] when she attempted to get in the middle of the [plaintiff] and [A] . . . [and] [t]his hit was likely accidental . . . ." Therefore, the hearing officer reversed the substantiation of physical abuse of A and S because there was "not enough . . . to conclude that the [plaintiff's] use of force was unreasonable, or that his conduct was abusive" toward A, nor that S's injury was intentional, as required under the department's definition of abuse.

Regarding the allegations of emotional neglect arising from the September, 2018 incident, the hearing officer found that "[t]he [plaintiff] has engaged in a pattern of erratic and bullying behaviors that have intimidated and frightened his children on a repeated basis" and that the children "have repeatedly told investigators that they are afraid of him." The hearing officer recognized that, although "the [children's] mother has contributed to these feelings, the [plaintiff's] own loss of control in his children's presence is no less real." As a result, the hearing officer concluded that the record supported the department's substantiation of emotional neglect as to the plaintiff's three youngest children.

Finally, the hearing officer addressed the department's decision to place the plaintiff's name on the central registry. In making her determination, the hearing officer "consider[ed] the intent of the perpetrator, the severity of the conduct, chronicity or pattern of behavior and the presence of substance abuse or domestic violence." See 2 Dept. of Children and Families, Policy Manual § 22-4, pp. 1–2. In considering the plaintiff's intent, the hearing officer stated that the plaintiff "is a mature adult with no apparent cognitive limitations . . . [who] has been the subject of numerous interventions over the years . . . [therefore] he should reasonably be expected to know that his inability to control his anger in the presence of his children was likely to cause them harm . . . ." Regarding the plaintiff's actions, the hearing officer stated that his angry outbursts were severe in that they caused his children fear and angst over an extended period of time. The hearing officer recognized, however, that the chronic pattern of behavior was more closely tied to the plaintiff's conflict with the children's mother and that she "was an integral part in the breakdown in the relationship between the [plaintiff] and his children . . . ." Notably, the hearing officer emphasized that "it cannot be said that [the plaintiff] poses a risk to children in general. His conduct, and indeed his ability to harm others, is the product of familial connections and does not necessarily correlate to his presentation outside those bonds." Lastly, the hearing officer stated that the plaintiff has not been diagnosed with any substance abuse concerns, recognized that "the allegations of spousal abuse have been embellished by the children's mother," and noted that all the criminal charges against the plaintiff have been dismissed or that a nolle prosequi had been entered. For these reasons, the hearing officer reversed the department's decision to place the plaintiff's name on the central registry.

On February 3, 2021, the plaintiff filed an administrative appeal pursuant to General Statutes § 4-183, challenging the hearing officer's decision upholding the substantiations of emotional neglect stemming from the July, 2018 and September, 2018 incidents. In his com-

plaint, the plaintiff claimed that "[t]he [department's] decision to find that the plaintiff emotionally neglected his three younger children is not support[ed] by the record in this matter." Specifically, the plaintiff took issue with the fact that the hearing "was conducted on the 'papers' without the benefit of testimony," asserted that the "decision is legally and factually inconsistent," and argued that "the record does not support . . . that any specific conduct of the plaintiff resulted in or was the cause of the condition of neglect" but that the condition of neglect arose due to the emotional turmoil caused by the dissolution proceedings.

The parties submitted preargument briefs to the court, and, on February 14, 2022, the court held oral argument on the plaintiff's appeal. During oral argument, counsel for the plaintiff maintained that the hearing officer's decision to uphold the substantiation of emotional neglect from the July, 2018 and September, 2018 incidents was "somewhat inconsistent with the overall factual decision itself and the actual evidence and exhibits that were entered into the record." Counsel for the plaintiff elaborated that despite recognizing that these circumstances were "a product of a contentious divorce" and making "specific findings about the credibility of certain individuals . . . [and the] type of inappropriate influence [that] may have been occurring amongst the family," the hearing officer ultimately found that "these two specific findings . . . are credible, or the evidence supports these statements. Whereas, for other findings she directly discredits the evidence put forward or discredits the testimony of others." Counsel for the defendant responded that the hearing officer's "decision is extremely well written, extremely detailed in her analysis . . . [a]nd . . . because she was so careful . . . she made decisions to not uphold certain substantiations having carefully considered the evidence before her." Additionally, counsel for the defendant noted that the hearing officer acknowledged the contentious divorce and her "trouble with [the] mother's credibility . . . ." Counsel for the defendant emphasized, however, that the hearing officer "gave tremendous weight to the consistency and clarity of the children's statements and reports" of the July, 2018 incident and regarding the September, 2018 incident, "was very careful in saying [that] she was really concerned that in spite of everything else that was going on in the children's lives, [that] the plaintiff's inability to restrain his anger and his intimidating bullying behavior had this negative impact on his relationship with his children." In rebuttal, counsel for the plaintiff stated that the relevant "inquiry is whether the conduct of a particular parent created the [emotional] neglect," and argued that here "the record doesn't support . . . that the plaintiff's conduct is what created the condition of neglect in the children."

The following day, the court issued a memorandum

of decision affirming the hearing officer's decision and dismissing the plaintiff's appeal. In its decision, the court summarized the findings made and the conclusions drawn by the hearing officer, as well as the law governing allegations of emotional neglect and the department's burden to substantiate such allegations. The court set forth that "the plaintiff, as father of the subject children, is a person responsible for the children's health, welfare, or care. Thus, the focus of the analysis must be on the plaintiff's actions and/or omissions in relation to his children's positive emotional development, to determine whether or not the plaintiff denied proper care and attention, or allowed the children to live under injurious conditions, all as related to the children's emotional development."

The court found substantial evidence that the plaintiff had a significant temper, lost control of his temper in relation to his children during the July, 2018 and September, 2018 incidents, and that these incidents "involved the plaintiff screaming, driving dangerously, hitting the children, and acting in a manner that genuinely frightened the children." The court found that the plaintiff's behavior exhibited a "serious disregard for the emotional well-being of the children and has impaired their emotional development." Additionally, the court stated that the hearing officer "treated the plaintiff fairly in her decision" by reversing the department's findings of physical abuse and determination to place the plaintiff's name on the central registry and understanding that the children's mother "inappropriately enflamed the situation and embellished her reports . . . ." The court emphasized, however, that the hearing officer "appropriately held the plaintiff responsible for his inability to control himself, his rage, and the effect of his inappropriate behavior upon the children." The court found "[t]he most compelling evidence of emotional neglect in the record is the consistent testimony of the plaintiff's children that they are afraid of him, nervous to be around him, and in some cases experiencing physical symptoms from their fear."

On the basis of the foregoing, the court found that the hearing officer's determination that the plaintiff emotionally neglected his three children was supported by substantial evidence in the record and was reasonable. Accordingly, the court found that the plaintiff had failed to establish on appeal that "the hearing officer's final decision was (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Following the court's dismissal, the plaintiff appealed to this court. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims, inter alia, that the court erred when it concluded that the findings of the hearing officer, substantiating the allegations of emotional neglect, were supported by substantial evidence in the record. We conclude that the court properly dismissed the plaintiff's appeal.

We first set forth the applicable standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [This] court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *Natasha B.* v. *Dept. of Children & Families*, 189 Conn. App. 398, 403–404, 207 A.3d 1101 (2019).

"The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the [C]ommissioner [of Children and Families], on the facts before [her], acted contrary to law and in abuse of [her] discretion . . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained." (Internal quotation marks omitted.) *F.M.* v. *Commissioner of Children & Families*, 143 Conn. App. 454, 475, 72 A.3d 1095 (2013).

Furthermore, § 4-183 (j) provides in relevant part that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," and, on appeal, "[n]either this court nor the trial court may retry the case . . . ." (Internal quotation marks omitted.) *Natasha B.* v. *Dept. of Children & Families*, supra, 189 Conn. App. 403. "The reviewing court must take into account contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . . "

(Internal quotation marks omitted.) *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 411–12, 94 A.3d 588 (2014).

The plaintiff argues that "the record does not demonstrate that [he] engaged in any conduct which would support a finding that he emotional[ly] neglected his children. . . . [Additionally] the record does not support . . . that any specific conduct of the [plaintiff] resulted in or was the cause of the condition of neglect."[9] The plaintiff also argues "that the hearing officer's decision was not supported by the weight of the substantial evidence on the entire record." In support of this position, he maintains that the record reflects: "1. [i]nconsistencies in the children's accusations, 2. [p]roblems with the conduct and credibility of the [children's] mother,[10] [and] 3. [t]he [plaintiff's] having successfully passed various programs." (Footnote added.) Additionally, he claims "that the hearing officer ignored evidence showing the [children's] inconsistencies in their accusations and that the children had been 'coached' by their mother to make these accusations against [him]."[11] We disagree.

General Statutes § 46b-120 (4) provides that "[a] child may be found 'neglected' who, for reasons other than being impoverished, (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, or (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child . . . ." To substantiate the allegations of emotional neglect against the plaintiff, the department was required to demonstrate that he is a person responsible for the health, welfare, or care of his children and that he denied his children proper care and attention emotionally, or failed to respond to their affective needs, which had an adverse impact on them or seriously interfered with their positive emotional development. See Policy Manual, supra, § 22-3, pp. 7–8.[12]

After conducting a thorough review of the documentary evidence submitted by the plaintiff and the defendant,[13] the hearing officer upheld the department's decision to substantiate two allegations of emotional neglect as to the plaintiff's three youngest children, arising from the July, 2018 and September, 2018 incidents. In regard to the July, 2018 incident, the record reflects that, when picking the children up from their mother's house, the plaintiff had an irate reaction upon learning of a missing bag, exited the car and began screaming and cursing, then drove his car out of the driveway while one of his children's doors remained open, and proceeded to drive with the children in an erratic and dangerous manner. In upholding the substantiation of emotional neglect, the hearing officer emphasized "that the children provided consistent reports about what happened in the car that day," which

were "believable," and that one child's "emotional response during her account of the incident is persuasive and lends additional credibility to the report." Although the hearing officer's balanced approach acknowledged evidence that "the children's mother fueled both the [plaintiff's] ire and the children's fear," she stated that the children "were justifiably frightened" and concluded that "[t]he [plaintiff's] conduct clearly demonstrated a serious disregard for the children's emotional well-being."

Regarding the September, 2018 incident, the record reflects that the plaintiff was in his vehicle with his three youngest children as passengers, became angry and hit A's arm, subsequently hit S in the face when S intervened between the plaintiff and A, and later dragged A out of the car, which resulted in bruising and scratches on the children. In upholding the substantiation of the allegations of emotional neglect arising from this incident, the hearing officer noted that "[t]he [plaintiff] has engaged in a pattern of erratic and bullying behaviors that have intimidated and frightened his children on a repeated basis. . . . His rage frightens his children. They have repeatedly told investigators that they are afraid of him." The hearing officer again acknowledged evidence that "the [children's] mother has contributed to the children's feelings," and then concluded that the plaintiff's "inability to restrain his anger has negatively impacted his relationship with his children [and] caused them trauma . . . ." Therefore, our review of the record reveals substantial evidence to support the hearing officer's findings and conclusions.

Additionally, we agree with the court's assessment that "the hearing officer treated the plaintiff fairly in her decision in view of the overall record," contrary to the plaintiff's assertion that the hearing officer failed to adequately consider inconsistencies in the children's accusations or issues with the conduct and credibility of the children's mother. Notably, the court found that, "[i]n reversing [the department's] findings of physical abuse[14] and [the department's] determination to place the plaintiff on the registry, the hearing officer reasonably understood that the [children's mother] inappropriately enflamed the situation and embellished her reports . . . [h]owever, the hearing officer also appropriately held the plaintiff responsible for his inability to control himself, his rage, and the effect of this inappropriate behavior upon the children." (Footnote added.) Additionally, the court stated that "[t]he most compelling evidence of emotional neglect in the record is the consistent testimony of the plaintiff's children that they are afraid of him, nervous to be around him, and in some cases experiencing physical symptoms from their fear." On appeal, "[i]t is not the role of [the trial] court to second-guess the factual findings and discretionary decisions of an administrative agency." *Northwest Hills Chrysler Jeep, LLC* v. *Dept. of Motor*

*Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-18-6042924-S (April 15, 2019) (reprinted at 201 Conn. App. 132, 163, 241 A.3d 739), aff'd, 201 Conn. App. 128, 241 A.3d 733 (2020). On the basis of the foregoing, we conclude that the court properly determined that the hearing officer did not act unreasonably, arbitrarily, illegally, or in abuse of her discretion in upholding the substantiation of the allegations of emotional neglect.[15] See *Natasha B.* v. *Dept. of Children & Families*, supra, 189 Conn. App. 404. Accordingly, the court properly dismissed the plaintiff's administrative appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] The plaintiff was represented by counsel during the administrative proceeding before the hearing officer of the Department of Children and Families and on appeal to the Superior Court.

[2] In his appeal to the Superior Court, the plaintiff names as the defendant Vannessa Dorantes, in her official capacity as Commissioner of Children and Families. In this opinion, we refer to the department either as the department or the defendant.

[3] The plaintiff also raises on appeal four claims which are intertwined with his substantial evidence claim. See footnotes 9, 13, 14, and 15 of this opinion.

[4] "The credible evidence in the record reveals that the [plaintiff] and his former wife were in the initial stages of a contentious separation and divorce when the department first became involved with the family in February, 2016."

[5] A guardian ad litem was appointed for the children in the dissolution action.

[6] As set forth previously, the record reflects that the incident took place on June 27, 2018, but was reported to the police by the children's mother on July 3, 2018. The hearing officer refers to the incident as "Emotional neglect of [S], [A], and [A. A.] (July, 2018)." For consistency, we refer to the incident as the July, 2018 incident throughout the opinion.

[7] "Careline is a department telephone service that mandatory reporters and others may call to report suspected child abuse or neglect." *In re Katherine H.*, 183 Conn. App. 320, 322 n.4, 192 A.3d 537, cert. denied, 330 Conn. 906, 192 A.3d 426 (2018).

[8] We note that the record contains conflicting information regarding the date the hearing officer's memorandum of decision was issued. It appears that, at some point after submitting the original version of her decision with a mistaken date of December 24, 2021, the hearing officer later issued a corrected decision with a date of December 24, 2020. On appeal to the Superior Court, however, only the original version of the hearing officer's decision was submitted to the court, therefore, the trial court's decision indicates that the hearing officer's decision was released on December 24, 2021.

[9] In addition, the plaintiff argues that the hearing officer's "decision is legally and factually inconsistent . . . [because] [t]he hearing officer in this matter found that certain alleged conduct of the [plaintiff] did not [rise] to the level of conduct which would result in central registry placement [for] substantiation of certain neglect allegations." To the extent that the plaintiff is arguing that the hearing officer's decision was inconsistent because it reversed certain substantiations and yet upheld two substantiations of emo-

tional neglect, we construe that argument as a reformulation of his claim that the record lacked substantial evidence to support the hearing officer's decision. We are not persuaded by that argument.

[10] The plaintiff argues that "[t]he emotional abuse was actually being caused by the [children's mother] falsely accusing and coercing the children, shaming the [plaintiff] to the children, brainwashing the children and used sheer manipulation tactics." In support of this argument, the plaintiff devotes a significant portion of his brief to discussing "malicious parent syndrome." Neither the hearing officer nor the court made any findings as to "malicious parent syndrome," and it is "axiomatic that this appellate body does not engage in fact-finding." (Internal quotation marks omitted.) *Grovenburg* v. *Rustle Meadow Associates, LLC*, 174 Conn. App. 18, 85, 165 A.3d 193 (2017). We note, however, that the court stated that "[t]he hearing officer found that the [children's mother] was not a credible witness, unfairly embellished reports, and purposefully provoked the plaintiff." Therefore, the record reflects that the hearing officer carefully considered the conduct of the children's mother.

[11] In his brief and during oral argument before this court, the plaintiff makes a passing reference to a claimed "refus[al] and/or [neglect]" by the department to interview several individuals, who the plaintiff contends were interviewed by the children's guardian ad litem and "refuted the [children's] mother's claims" or "witnessed 'alienating patterns' of the [children's] mother [and] false reporting . . . ." The plaintiff also briefly posits "the question that should be asked is why did [the department] not include any of this in their reports?" The plaintiff's concerns are " 'merely mentioned and not briefed beyond a bare assertion' " and, accordingly, are inadequately briefed. *Marvin* v. *Board of Education*, 191 Conn. App. 169, 178 n.8, 213 A.3d 1155 (2019); id. ("Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.)).

Moreover, assuming that the information the plaintiff claims was omitted was of evidentiary value, we note that he did not include the information as part of the exhibits that he submitted, through his counsel, for review by the hearing officer and, on appeal, our review is confined to the record before the hearing officer. See *Nussbaum* v. *Dept. of Energy & Environmental Protection*, 206 Conn. App. 734, 739, 261 A.3d 1182 ("[r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence *in the administrative record*" (emphasis added; internal quotation marks omitted)), cert. denied, 339 Conn. 915, 262 A.3d 134 (2021); see also *Blinkoff* v. *Commission on Human Rights & Opportunities*, 129 Conn. App. 714, 723, 20 A.3d 1272 ("We take [the plaintiff's contention], essentially, to be a claim that the record should be expanded to include information that was not submitted for the consideration of the referee. In so arguing, the plaintiff misapprehends the scope of review of an administrative appeal, which is confined to the record."), cert. denied, 302 Conn. 922, 28 A.3d 341 (2011).

[12] Section 22-3 of the department's policy manual provides in relevant part: "Whether or not the adverse impact has to be demonstrated is a function of the child's age, cognitive abilities, verbal ability and developmental level. Adverse impact is not required if the action/inaction is a single incident which demonstrates a serious disregard for the child's welfare.

"The adverse impact [of emotional neglect] may result from a single event and/or from a consistent pattern of behavior and may be currently observed or predicted as supported by evidenced based practice.

"Evidence of emotional neglect includes, but is not limited to, the following: inappropriate expectations of the child given the child's developmental level; failure to provide the child with appropriate support, attention and affection; and/or permitting the child to live under conditions, circumstances or associations injurious to his well-being including, but not limited to, the following . . . psychiatric problem of the caregiver, which adversely impacts the child emotionally; and exposure to family violence which adversely impacts the child emotionally.

"Indicators may include, but are not limited to, the following: depression; withdrawal; low self-esteem; anxiety; fear; aggression/passivity; emotional instability; sleep disturbances; somatic complaints with no medical basis; inappropriate behavior for age or development; suicidal ideations or attempts; extreme dependence; academic regression; and/or trust issues." Policy Manual, supra, § 22-3, pp. 7–8.

[13] The plaintiff argues that his "inability to call the children as a witness and the admission of hearsay evidence against him" violated his due process rights. Additionally, he argues that "he was deprived of fundamental fairness and due process because he was unable to cross-examine an opposing witness presented by the department . . . ."

The defendant responds that the plaintiff's "argument fails because the plaintiff chose not to call any witnesses and did not object to the admission of the department's exhibits containing hearing statements of the children and others. . . . In reality, the plaintiff chose not to have a hearing at which testimony would be presented. Counsel for the plaintiff filed a request with the department asking that the administrative hearing be decided on the papers." As a result, the defendant contends that the plaintiff "cannot now complain that there was not a hearing with live testimony" and "[b]ecause the plaintiff failed to raise [the hearsay] issue with the hearing officer, this court should decline to review it." We agree with the defendant and conclude that the plaintiff waived this claim by inducing any claimed error.

"[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [allegedly] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party. . . . [W]hether we call it induced error, encouraged error, waiver, or abandonment, the result—that the . . . claim is unreviewable—is the same." (Internal quotation marks omitted.) *Independent Party of CT—State Central* v. *Merrill*, 330 Conn. 681, 724, 200 A.3d 1118 (2019).

Our review of the record leads us to conclude that the plaintiff, through counsel, induced the claimed error in this case by requesting and consenting to the format whereby the administrative hearing was adjudicated on the papers, and, furthermore, by declining to object to the documentary evidence submitted by the department and by failing to raise the claimed error on appeal to the Superior Court. Accordingly, we decline to review the plaintiff's claims.

[14] The plaintiff argues that the hearing officer's decision was in excess of her statutory authority in that the officer "failed to hold a hearing regarding the reasonableness of the [plaintiff's] discipline of the children" and that he "did not intend to hurt or injure the child, but rather to discipline misbehavior." In support of his argument, the plaintiff cites to General Statutes (Rev. to 2017) § 53a-18, a statute which provides in relevant part that "[t]he use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) [a] parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ." Consistent with the policy underlying this statute, the department is required to consider the reasonableness of the parent's discipline of his or her children prior to substantiating an allegation of *physical abuse*. See *Lovan C.* v. *Dept. of Children & Families*, 86 Conn. App. 290, 297, 860 A.2d 1283 (2004); see also *State* v. *Nathan J.*, 294 Conn. 243, 259, 982 A.2d 1067 (2009) ("[u]nder [the *Lovan C.*] framework, abuse always consists of two primary elements—(1) physical injury, and (2) wilfulness—but, in order to respect the legislature's intent to protect parents from reprisal for reasonable physical discipline of their children, any substantiation of abuse hearing against a parent also must include a *separate* evaluation of reasonableness" (emphasis in original)). As we previously noted, the hearing officer reversed the department's substantiation of the allegations of physical abuse against the plaintiff. Accordingly, as this is the only ground on which the plaintiff challenges the hearing officer's statutory authority, we are unpersuaded.

[15] In one page of his brief, the plaintiff argues that the hearing officer's decision was based on unlawful procedure and error of law, in support of which the plaintiff renews his assertion that "[t]he hearing in this case was conducted on the 'papers' without the benefit of testimony." The plaintiff then proceeds to delineate the procedure by which a person who has been substantiated as an individual responsible for abuse or neglect can appeal that determination. The plaintiff does not set forth any additional analysis connecting this claim to any alleged error beyond separately briefing his due process claim. See footnote 13 of this opinion. Accordingly, we decline

to review his claim. See *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)).

———————————————